Judge Hellerstein

OUTTEN & GOLDEN LLP
Anne Golden (AG 5564)
Ossai Miazad (OM 1127)
Cara Greene (CG 0722)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
*Attorneys for Plaintiff*



08 CV 02146

RECEIVED
MAR 03 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————x
REGINA HOLLOWAY,

    Plaintiff,

- against -

JP MORGAN CHASE BANK, N.A.,

    Defendant.
————————————————————x

**COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff Regina Holloway, by her attorneys, Outten & Golden LLP, avers as follows:

## NATURE OF THE CASE

1. This is an employment discrimination and civil rights action against defendant JP Morgan Chase Bank ("JPMC") seeking redress for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and as specifically amended by the Pregnancy Discrimination Act of 1978 ("PDA") 42 U.S.C. § 2000e (k); the New York City Human Rights Law, New York City Administrative Code §§ 8-101 et seq. ("NYCHRL"); and the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 et. seq., as amended ("ERISA").

2. Regina Holloway, a former employee of JPMC, suffered harassment and discrimination by defendant because she is a woman, because she has children, because she chose to become pregnant, and because she had a disability as a result of that pregnancy. Defendant also

retaliated against Ms. Holloway after she complained about the discrimination by, among other things, firing her without cause when she took a pregnancy-related leave of absence.

3. Ms. Holloway now brings this action to seek redress for the injuries she has suffered as a result of defendant's violations of federal and local anti-discrimination laws.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the Title VII and ERISA claims because they arise under the laws of the United States, 28 U.S.C. § 1331. It also has jurisdiction over the Title VII claims under 28 U.S.C. § 1343 because they seek to recover damages for deprivation of equal rights.

5. This Court has supplemental subject-matter jurisdiction over the NYCHRL claims because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

6. This Court also has diversity jurisdiction over plaintiff's claims under 28 U.S.C. § 1332 because plaintiff is a citizen of the State of Pennsylvania and defendant is incorporated in Delaware with its headquarters in New York.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 2000e-5(f)(3), because defendant has an office, conducts business, and can be found in this district, and the causes of action arose and the acts and omissions complained of occurred herein.

## ADMINISTRATIVE PREREQUISITES

8. Ms. Holloway has satisfied all administrative prerequisites to commencing this action.

9. On April 28, 2005, Holloway filed a charge of employment discrimination with the

U. S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination by defendant JPMC based on her pregnancy and retaliation for complaining of the discrimination.

10. On August 30, 2007, the EEOC issued a finding of probable cause in favor of Ms. Holloway on her claim of discrimination.

11. On November 27, 2007, Ms. Holloway requested a notice of right to sue from the EEOC, which she received on December 5, 2007.

12. Ms. Holloway will have commenced this action within ninety days of her receipt of the notice of right to sue.

13. Contemporaneously with the filing of this complaint, Ms. Holloway has mailed a copy, along with a letter of explanation, to the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## PARTIES

14. At all times relevant to this action, Plaintiff was a resident of the State of New York.

15. Defendant JPMC is a privately held corporation that maintains offices within this judicial district.

16. Upon information and belief, at all times relevant hereto, JPMC met and meets the definition of "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

17. Ms. Holloway worked for defendant JPMC from September 2002 through September 2004. From June 2003 until defendant fired her in September 2004, she was employed as a Loan Officer Assistant.

18. In May 2003, Ms. Holloway interviewed at JPMC's New York office with Sales

Manager Mark Wenitzky for a Loan Officer Assistant position.

19. During this interview, Mr. Wenitzky asked Ms. Holloway if she had any children. Ms. Holloway responded that she had two young children at home. Mr. Wenitzky then asked her whether she was married, and she indicated that she was not.

20. Ms. Holloway did not hear from Mr. Wenitzky regarding her candidacy after the interview until she called him a few weeks later to ask about her status.

21. Mr. Wenitzky told her that his only reservation in hiring her was that she might have possible child care issues, but he ultimately offered her the job.

22. Ms. Holloway accepted the position because she needed employment, even though Mr. Wenitzky had made clear that he believed her status as a single mother with young children would negatively affect her ability to work.

23. From June 2003 until about November 2003, Ms. Holloway worked as an assistant to Mark Wenitzky.

24. During the time that Ms. Holloway worked for Mr. Wenitzky, he had a second loan officer assistant working for him, Kevin (last name unknown), a young male JPMC employee with no known children.

25. Mr. Wenitzky gave almost all his loan-related work to Kevin. He gave Ms. Holloway substantially less work than Kevin, and the work he did give her was primarily secretarial and clerical.

26. On about August 20, 2003, Ms. Holloway asked Mr. Wenitzky if she could take a sick day (also known as "Incidental Time Off" or "ITO day").

27. Even though JPMC's leave policy did not require Ms. Holloway to get prior authorization for such an absence, she emailed Mr. Wenitzky explaining that she was feeling ill because she was pregnant.

28. When Ms. Holloway spoke with Mr. Wenitzky over the telephone the following day, August 21st, he began yelling at her, expressing anger and resentment specifically because she was pregnant.

29. Among other things, Mr. Wenitzky asked her again how many children she "already" had and then disparaged her for having chosen to have another child. He also told her that he felt he would be paying her "for nothing" now that she was pregnant and would need to take maternity leave.

30. On or about August 22, 2003, Ms. Holloway became ill while at work because of her pregnancy.

31. When Mr. Wenitzky learned she was sick, he again became enraged.

32. That same day, Ms. Holloway asked Mr. Wenitzky for some time off because of her pregnancy-related illness, but Mr. Wenitzky said he would not approve any vacation or sick time. He told her she would have to take a short-term disability leave of absence.

33. Under JPMC's leave policy at the time, Ms. Holloway did not need Mr. Wenitzky's approval to take an ITO day since she had not exceeded her annual allocation.

34. When Ms. Holloway reminded Mr. Wenitzky of this policy, he indicated that he did not know of this rule and, instead, threatened to force her to take a leave if she could not "get it together" by the end of the week.

35. In about late August 2003, Ms. Holloway went on leave as directed by Mr. Wenitzky, but never received any paperwork to record her absence or the reason for it.

36. On about August 27, 2003, Ms. Holloway spoke with a JPMC Human Resources generalist, Alwyn Dias, and told him about Mr. Wenitzky's reaction to her pregnancy and her request to take sick days. Mr. Dias said that someone would speak to Mr. Wenitzky, but did not specify who.

37. Upon information and belief, no one from Human Resources spoke with Mr. Wenitzky about his behavior toward Ms. Holloway.

38. Also during her August 27th meeting with Mr. Dias, Mr. Dias asked Ms. Holloway whether she wanted to take leave, explaining that she would not be forced to do so.

39. When Ms. Holloway informed Mr. Dias that she was afraid of retaliation, Mr. Dias assured her that she did not have to worry about that.

40. With Mr. Dias' assurances, Ms. Holloway decided to take leave to recuperate from her pregnancy-related illness.

41. Mr. Dias said he would provide her with the paperwork necessary to document her leave. Ms. Holloway never received any such paperwork.

42. Ms. Holloway called Mr. Dias at least three times to follow up with him, but Mr. Dias avoided taking her calls each time and never called her back.

43. Ms. Holloway recovered from her illness and was ready to return to work in about November 2003.

44. However, Ms. Holloway was concerned that Mr. Wenitzky would treat her poorly when she returned and would jeopardize her future at JPMC.

45. To protect her career, she sent a letter to him, Mr. Dias, and Robert Donovan, Vice President, complaining of Mr. Wenitzky's extreme reaction and hostility toward her after she had told him she was pregnant. In this letter she also asked to be transferred to another area.

46. Defendant reassigned Ms. Holloway to another loan officer and sales manager, Jeff Szymanski. Mr. Szymanski worked in Ms. Holloway's previous office, only a few doors away from Mr. Wenitzky.

47. This transfer drastically reduced Ms. Holloway's annual compensation. As a Loan Officer Assistant, she was paid a fixed salary plus commissions based on the production level of the

loan officer to whom she was assigned.

48.     While working as Mr. Wenitzky's assistant, her base salary was approximately $12,000 per year, and the bulk of her annual compensation came from commissions. She earned four basis points, or about $400, for every $1 million Mr. Wenitzky produced.

49.     While working for Mr. Szymanski, Ms. Holloway's base salary was $18,000, and she earned six basis points, or $600, for every $1 million he produced.

50.     Despite this change in compensation formula, Ms. Holloway's annual income decreased as a result of the transfer because Mr. Szymanski produced millions less in revenue than Mr. Wenitzky did each month.

51.     Ms. Holloway worked for Mr. Szymanski for approximately three months, until about January 2004, when she was hospitalized for complications related to her pregnancy. At that time, her doctor ordered her to stay home and rest.

52.     Ms. Holloway told Mr. Dias of her doctor's instructions so she could arrange to take a leave of absence. Mr. Dias indicated he would inform the outsourced Access Human Resources department ("Access HR") that she was on leave.

53.     However, as before, Mr. Dias did nothing.

54.     JPMC failed to pay Ms. Holloway for the duration of her leave, between approximately January 2004 and May 2004.

55.     Not until about May or June 2004 did she receive a retroactive payment covering the shortfall for the preceding months.

56.     In about early May 2004, Ms. Holloway called Mr. Dias to inquire about returning to work, even though she had six weeks of maternity leave remaining.

57.     For the third time, however, Mr. Dias evaded her calls.

58.     For weeks, Ms. Holloway attempted to obtain a return-to-work date from Mr. Dias.

59. When she finally managed to speak with him, Mr. Dias made one excuse after another and repeatedly told her to call again later.

60. After two months of trying to talk to Mr. Dias about her return, he at last said that she could return on about July 11, 2004, but that her position had been eliminated.

61. Mr. Dias further stated that she had three months to find another job within JPMC. If she did not find a new position within that time period, she would be let go.

62. On about July 11, 2004, Ms. Holloway returned to her former desk to gather her belongings, only to learn that JPMC already had discarded her personal property, without warning or informing her.

63. Holloway also found a new Loan Officer Assistant seated at what had been her desk and a new Loan Officer seated where her former supervisor, Mr. Szymanski, had been located.

64. Contrary to Mr. Dias' assertion, her position had not been eliminated; she simply had been replaced.

65. Ms. Holloway's new "office" upon return from maternity leave was a makeshift workspace beside the secretary.

66. Although Ms. Holloway was entitled to continued benefits and was on JPMC's payroll for about another three months, her health insurance was canceled before this period ended.

67. Meanwhile, the records of JPMC's outsourced human resources group, Access HR, wrongly indicated that Ms. Holloway had quit her job, instead of indicating that her position had been eliminated.

68. Defendant knew that the plaintiff was pregnant and discriminated against her because of her status as a pregnant woman.

69. Defendant acted with willful and/or reckless disregard for Ms. Holloway's statutorily protected rights.

70. As a result of defendant's actions described above, Ms. Holloway has suffered and continues to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, emotional distress, anguish, pain and suffering.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### DISCRIMINATION BASED ON GENDER AND PREGNANCY IN VIOLATION OF TITLE VII

71. Plaintiff realleges and incorporates by reference all the preceding paragraphs.

72. By the act and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of her gender and her status as a pregnant woman and a woman with children, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., specifically 42 U.S.C. § 2000e(k), and the Civil Rights Act of 1991.

73. Defendant knew that its actions constituted unlawful discrimination and showed willful and/or reckless disregard for plaintiff's statutorily protected rights.

74. Defendant's actions described above directly and proximately have caused, and continue to cause, plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, emotional distress, anguish, pain and suffering.

### SECOND CLAIM FOR RELIEF:
### DISCRIMINATION BASED ON GENDER AND PREGNANCY IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

75. Plaintiff realleges and incorporates by reference all the preceding paragraphs.

76. By the act and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of her gender and her status as a pregnant woman and a woman with children, in violation of the New York City Human Rights

Law, New York City Administrative Code § 8-107(1).

77. Defendant knew that its actions constituted unlawful discrimination and showed willful and/or reckless disregard for plaintiff's statutorily protected rights.

78. Defendant's actions described above directly and proximately have caused, and continue to cause, plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, emotional distress, anguish, pain and suffering.

## THIRD CLAIM FOR RELIEF:
## DISCRIMINATION BASED ON PREGNANCY-RELATED DISABILITY IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

79. Plaintiff realleges and incorporates by reference all the preceding paragraphs.

80. By the act and practices described above, defendant has discriminated against plaintiff in the terms and conditions of her employment on the basis of her pregnancy-related disability, in violation of the New York City Human Rights Law, New York City Administrative Code § 8-107(1).

81. Defendant knew that its actions constituted unlawful discrimination and showed willful and/or reckless disregard for plaintiff's statutorily protected rights.

82. Defendant's actions described above directly and proximately have caused, and continue to cause, plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, emotional distress, anguish, pain and suffering.

## FOURTH CLAIM FOR RELIEF
## RETALIATION IN VIOLATION OF TITLE VII

83. Plaintiff realleges and incorporates by reference all the preceding paragraphs.

84. By the acts and practices described above, defendant retaliated against plaintiff for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, specifically, 42 U.S.C. § 2000e-3(a), and as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. §

2000e(k), and the Civil Rights Act of 1991.

85. Defendant knew that its actions constituted unlawful retaliation and showed willful and/or reckless disregard for plaintiff's statutorily protected rights.

86. Defendant's actions described above directly and proximately have caused, and continue to cause, plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, emotional distress, anguish, pain and suffering.

### FIFTH CLAIM FOR RELIEF
### RETALIATION IN VIOLATION OF
### THE NEW YORK CITY HUMAN RIGHTS LAW

87. Plaintiff realleges and incorporates by reference all the preceding paragraphs.

88. By the acts and practices described above, defendant retaliated against plaintiff for engaging in protected activity, in violation of the New York City Human Rights law, New York City Administrative Code §8-107(7).

89. Defendant knew that its actions constituted unlawful retaliation and showed willful and/or reckless disregard for plaintiff's statutorily protected rights.

90. Defendant's actions described above directly and proximately have caused, and continue to cause, plaintiff to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, emotional distress, anguish, pain and suffering.

### SIXTH CLAIM FOR RELIEF
### DENIAL OF BENEFITS IN VIOLATION OF ERISA

91. Plaintiff realleges and incorporates by reference all the preceding paragraphs.

92. Defendant prematurely, and without notice, canceled the health benefits to which plaintiff was entitled under the defendant's employee benefits plan in violation of ERISA, 29 U.S.C. §§ 1001 et. seq.

93.  Defendant knowingly and willingly violated ERISA by terminating the health benefits to which plaintiff was entitled.

94.  Defendant's actions described above directly and proximately caused plaintiff to suffer financial loss, emotional distress, anguish, pain and suffering.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment:

A.  Declaring that the acts and practices complained herein violated Title VII, the New York City Human Rights Law, and ERISA;

B.  Directing defendant to pay plaintiff back pay;

C.  Directing defendant to pay plaintiff front pay;

D.  Directing defendant to pay plaintiff pre-judgment interest;

E.  Directing defendant to pay plaintiff compensatory and punitive damages;

F.  Awarding reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. §216(b), 42 U.S.C. §2000e-5(k) and New York City Admin. Code §8-502(f) and ERISA, 29 U.S.C. § 1132(g)(1); and

G.  Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR A TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 3, 2008

Respectfully submitted,

By: *Anne Golden*
Anne Golden (AG5564)

**Outten & Golden LLP**
Anne Golden (AG 5564)
Ossai Miazad (OM 1127)
Cara Greene (CG 0722)
Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

*Attorneys for Plaintiff*